**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

—————————————————————

**GENE C.,**

                                   **Plaintiff,**                                   **22-CV-213Sr**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                                   **Defendant.**

—————————————————————

## <u>DECISION AND ORDER</u>

As set forth In the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff applied for supplemental security income ("SSI"), benefits with the Social Security Administration ("SSA"), on April 23, 2019, at the age of 33, alleging disability due to agoraphobia; post traumatic stress disorder; depressive disorder; anxiety; lower back issues/disc displacement; and tremors. Dkt. #6, p.403.

On August 27, 2020, plaintiff appeared by telephone conference call with counsel and testified, along with an impartial vocational expert ("VE"), Dennis King, at an administrative hearing before Administrative Law Judge ("ALJ"), Stephen Cordovani. Dkt. #6, pp.36-73.

Plaintiff testified that he lived alone in a mobile home park. Dkt. #6, p.41. He has three grown children as well as a five year-old daughter who stays with him three and one-half days per week, including overnights. Dkt. #6, pp.44-46. His girlfriend and his daughter's mother does the grocery shopping due to plaintiff's back and anxiety. Dkt. #6, p.42. His girlfriend drives him to medical appointments. Dkt. #6, p.56. He cooks sporadically. Dkt. #6, p.52. He sold his DJ business to a friend, but would help on weekends. Dkt. #6, pp.43-44. He is left handed. Dkt. #6, p.42.

Plaintiff has experienced tremors in his hands, neck and legs since he was a small child, but testified that they have "progressively gotten worse." Dkt. #6, pp.59-60. Plaintiff testified that his hand tremors are constant, but can worsen with anxiety. Dkt. #6, p.59. He left a job because he couldn't hand customers change and described people in social situations asking him what was the matter. Dkt. #6, p.59. He described this condition as a hindrance when trying to use a screw driver or with any fine motor skill. Dkt. #6, p.59. He started a prescription to relieve the tremors about six months earlier, but testified that it didn't seem to be helping at all. Dkt. #6, p.60. Plaintiff conceded a history of alcohol dependence, but testified that his tremors did not diminish during periods of abstinence. Dkt. #6, p.62.

When asked to assume an individual with plaintiff's age, education and past work experience who was limited to sedentary exertion with no more than frequent balancing and occasional ramps and stairs, stooping, kneeling, crouching and crawling, who could not work around hazards and was limited to simple instructions and routine

tasks without supervisory duties, independent decision making or strict production quotas, with occasional interaction with supervisors, coworkers and the general public, the VE testified that plaintiff could work as a lens inserter, printed circuit board layout taper and jewelry preparer, each of which are unskilled, sedentary positions. Dkt. #6, pp.69-70.

The ALJ rendered a decision that plaintiff was not disabled on September 9, 2020. Dkt. #6, pp.19-27. The Appeals Council denied review on January 20, 2022. Dkt. #6, p.6. Plaintiff commenced this action seeking review of the Commissioner's final decision on March 16, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

-3-

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient Residual Functional Capacity ("RFC"), for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education and work experience. 20 C.F.R. § 416.920(g).

In the instant case, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful

activity since his application date of April 23, 2019; (2) plaintiff's major depressive disorder, anxiety disorder, post-traumatic stress disorder, alcohol use disorder, lumbar degenerative disc disease, and status post-lumbar surgery constitute severe impairments; (3) plaintiff's impairments did not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform work at the sedentary exertional level and to lift/carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours and stand/walk for two hours in an 8-hour day, frequently balance, occasionally climb ramps/stairs, stoop, kneel, crouch and crawl, understand, remember and carry out simple and routine instructions and tasks, work in a low stress environment with no supervisory duties, independent decision-making, strict production quotas or more than minimal changes in work routine and processes and occasionally interact with supervisors, coworkers and the public; and (5) plaintiff was capable of working as a lens inserter, printed circuit board taper, and jewelry preparer, each of which were unskilled, sedentary positions, and was not, therefore, disabled within the meaning of the SSA. Dkt. #6, pp.17-28.

Plaintiff argues that it was error for the ALJ to fail to incorporate any limitations resulting from plaintiff's generalized tremors into his RFC, noting that each of the jobs identified by the vocational expert require occasional or frequent finger dexterity. Dkt. #7-1, pp.6-8.

The Commissioner responds that the ALJ's decision is supported by substantial evidence and that plaintiff failed to meet his burden of demonstrating that his tremors precluded his ability to perform work at the RFC level assessed by the ALJ,

noting that  the evidence of record revealed intact hand and finger dexterity and full grip strength bilaterally.  Dkt. #8-1, pp.13.

Plaintiff replies that the ALJ's failure to incorporate limitations attributable to his tremors resulted in testimony from the vocational expert suggesting that plaintiff could perform jobs that are obviously incompatible with generalized tremors. Dkt. #10, pp.4-5.

The medical evidence of record reveals that multiple providers observed and noted plaintiff's temors. For example, during his initial examination at Community Concern Behavioral Health on September 6, 2018, plaintiff was observed with "[s]evere bilateral hand termors" by Margaret Root, LMSW. Dkt. #6, p.659. Nurse Practitioner Traci Raynor also noted "[b]ilateral tremors" on December 17, 2018, February 11, 2019, April 8, 2019, May 7, 2019, and "[b]ilateral tremors that have been present since he was a child" on June 11, 2019, July 16, 2019. Dkt. #6, pp.669, 671, 673, 675, 677, 679. A Mental Health Medical Source Statement completed by Ms. Root on July 30, 2019 notes "severe hand tremor" and "bilateral hand tremors" as a symptom in addition to his mental health symptoms. Dkt. #6, p.770. Ms. Root continued to note "[b]ilateral tremors that have been present since he was a child" on October 7, 2019 and November 11, 2019. Dkt. #6, pp.744 & 807.

Plaintiff's primary medical provider, Erica Redenbach, DO, observed "[c]onstant tremor of the arms," diagnosed plaintiff with "[e]ssential tremor" and referred plaintiff for a neurology evaluation on April 22, 2019. Dkt. #6, pp.592-593.

On July 16, 2019, during consultation for plaintiff's back pain at Buffalo Neurosurgery Group, James Egnatchik, M.D., observed "a significant bilateral hand tremor." Dkt. #6, p.720. Michael Pell, M.D. also noted "a significant bilateral hand tremor" upon consultation with Buffalo Neurosurgery Group on November 5, 2019. Dkt. #6, p.750.

At his consultative examination with Rita Figueroa, MD, on August 19, 2019, plaintiff reported:

> a history of tremors that started during childhood. However, over the last three years he is having a harder time buttoning. He cannot tie his shoes either. He describes the tremors now becoming more generalized and they are aggravated by activity and stress. He is able to open jars and round doorknobs. He does still have a strong grip.

Dkt. #6, p.647. Upon examination, plaintiff was able to squat 100%, but was then observed to have "generalized shakiness in his body." Dkt. #6, p.648. Dr. Figueroa observed that plaintiff's hand and finger dexterity was intact; that plaintiff's grip strength was 5/5 bilaterally and that plaintiff was able to zipper, button, and tie. Dkt. #6, p.649. Dr. Figueroa diagnosed plaintiff with chronic back pain with evidence of neuropathy and generalized tremors and opined that plaintiff would have moderate limitations lifting and carrying, as well as mild to moderate limitations to prolonged sitting, standing and squatting. Dkt. #6, p.650.

At his neurology evaluation with Anupama Kale, MD, at the Dent Neurologic Institute on October 14, 2019, plaintiff reported that his tremors began in

childhood and that he

> initially mainly noticed it as other people would comment on tremor; however, tremor has progressively worsened over the years.

> Tremor affects both hands but is worse in his left dominant hand. It typically occurs with action when he is trying to concentrate on doing something like using a screwdriver. He spills constantly while eating with utensils. He is able to drink from a cup using 1 hand on most days but almost always has to use 2 hands to shave. He sometimes even avoids shaving due to the tremor.

> He does note that he sometimes notices his head shake (when directly questioned) but only when he is really tired (no-no directionality). He denies any pulling or posturing of neck/head per se. His voice may be shaky if he is stressed.

Dkt. #6, p.733. Upon examination, Dr. Kale determined:

> Exam today primarily demonstrates postural/action tremor. May have slight no-no head jerk. Likely essential tremor (though dystonic tremor is also a consideration). May have element of alcohol withdrawal tremor.

Dkt. #6, p.735. Dr. Kale counseled plaintiff on the diagnosis as well as symptomatic

treatment options, but plaintiff decided to forego medication management due to the

other prescriptions he was taking. Dkt. #6, p.735.

Upon review by state agency consultant D. Brauer on December 30,

2019, it was noted that:

> Clmt has tremors which cause his arms and hands to shake. This issue is documented in clmt's MER from Southgate Medical Park (04/22/19). The tremors were present at the internal med CE, 8/19/19, and were exacerbated after clmt performed a 100% squat. This is the basis for clmt's postural limitations of occasionally stooping,kneeling, crouching and crawling.

Dkt. #6, p.760. D. Brauer also noted that plaintiff's "strength was 5/5 in the upper and lower extremities and hand/finger dexterity was intact." Dkt. #6, p.760.

The ALJ declined to find plaintiff's tremors a severe impairment, explaining:

> The record contains reference to tremors including a discussion in the medical record in October 2019. The claimant testified that he has had such condition dating back as far as 2007. Yet, claimant worked multiple jobs, did DJ/karaoke activities and more recently even repaired a go-kart. He also appears to be an accomplished cook with the record reflecting him hosting and preparing homemade Italian meals. Thus, the record does not reflect that this condition has any more than a minimal effect on daily function, if any at all. Additionally, there is no medical evidence indicating otherwise.

Dkt. #6, p.21. The ALJ further noted that

> Examinations also document hand tremors; however, progress notes reflect that he reported having experienced these tremors since childhood, indicating that he was able to work despite this condition prior to the period at issue . . . Significantly, progress notes do not generally document hand/finger dexterity issues or grip strength loss.

Dkt. #6, p.24. The ALJ specifically declined to impose physical restrictions relating to plaintiff's tremors, explaining, "[d]espite his history of hand tremors, examinations of record do not reflect hand/finger dexterity loss or grip strength loss that would support manipulative limitations." Dkt. #6, p.25.

An ALJ is required to consider all medically determinable impairments, even those that are not determined to be severe, when assessing functional capacity. 20 C.F.R. § 416.945(a)(2). Thus, even where an ALJ's determination that an

impairment is not severe is supported by substantial evidence, the ALJ is still required to incorporate limitations from such a medically determinable impairment into the assessment of plaintiff's residual functional capacity. *Parker -Grose v. Astrue*, 462 Fed. App's 16, 18 (2d Cir. 2012); *See Coulter v. Comm'r of Soc. Sec.*, 673 F. Supp.3d 365, 376 (S.D.N.Y. 2023) ("Finding an impairment to be non-severe is not the end of the ALJ's obligation to consider that impairment.").

          As set forth above, plaintiff's hand tremors were consistently diagnosed by multiple health care providers so as to establish them as a medically determinable impairment. Therefore, the ALJ was required to incorporate the impact of this impairment upon plaintiff's ability to engage in work activity on a regular and continuing basis. Even accepting the consultative examiner's opinion that plaintiff's hand and finger dexterity was intact, it is axiomatic that plaintiff's hand tremors would have at least some effect on his employability. Thus, it was error to exclude plaintiff's hand tremors from the  RFC assessment altogether. *See Rittenhouse v. Comm'r of Soc. Sec.*, 21-CV-393, 2023 WL 6516920, at *5 (E.D.N.Y. Oct. 5, 2023) (remanding where RFC failed to include any restrictions related to plaintiff's essential tremors); *Cummings v. Comm'r of Soc. Sec.*, 19-CV-2071, 2020 WL 4227536, at *10 (E.D.N.Y. July 23, 2020) (remanding where ALJ failed to ask the VE whether jobs existed for an individual who had plaintiff's exertional limitations and tremors). Where, as here, "a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." *Melendez v. Astrue,* 630 F. Supp.2d

308, 319 (S.D.N.Y. 2009); *See Futia v. Astrue*, 2009 WL 425657, at *9 (N.D.N.Y. 2009)

("A hypothetical question that does not present the full extent of a claimant's

impairments cannot provide a sound basis for vocational expert testimony.").


**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings

(Dkt. #7), is granted and the matter is remanded for further proceedings and the

Commissioner's motion for judgment on the pleadings (Dkt. #8), is denied.


The Clerk of the Court is directed to close this case.


**SO ORDERED.**


**DATED:**      **Buffalo, New York**
                **September 20, 2024**

                                    **  s/ H. Kenneth Schroeder, Jr.  **
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**